**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-02667-SHL-tmp |
| | ) | |
| EVOLVE BANK AND TRUST, | ) | |
| Defendant. | ) | |

**CONSENT ORDER**

## I.    INTRODUCTION

The Parties jointly submit this Consent Order for approval and entry by the Court.[1]  The Order resolves all claims of the United States of America ("United States") simultaneously filed in a Complaint, alleging that Evolve Bank & Trust ("Evolve" or "the Bank") engaged in a pattern or practice of lending discrimination in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f, Regulation B, 12 C.F.R. § 1002.1 *et seq.*, by discriminating on the basis of race, sex, and national origin in the pricing of residential mortgage loans.  Specifically, the United States alleges that from at least 2014 through 2019, Evolve charged Black, Hispanic, and individual female borrowers statistically significant higher amounts in discretionary pricing components than non-Hispanic white and individual male borrowers, resulting in Black and Hispanic borrowers paying more for their mortgage loans than similarly-situated white borrowers, and individual female borrowers paying more than similarly-situated male borrowers.

---

[1] The Court altered the Parties' proposed language in paragraph 52, to reflect a dismissal of this matter now, with the Court retaining jurisdiction to enforce the Consent Order, if needed.

The Court has jurisdiction over the Parties and subject matter of this action. There have been no factual findings or adjudication in this case. The Parties enter into this Consent Order to voluntarily resolve all claims arising from the conduct alleged in the Complaint. Entry of this Consent Order is in the public interest. The Parties agree that the full implementation of the terms in this Consent Order will provide a resolution of the claims asserted in the Complaint in a manner consistent with Evolve's legitimate business interests. The Bank denies liability and any and all wrongdoing relating to its pricing of residential mortgage loans. Specifically, the Bank maintains that its annual testing of mortgage loan pricing during the 2014 through 2019 time period, which was consistent with accepted industry standards, showed no pattern or practice of statistically significant disparities in the controlled Annual Percentage Rates ("APR") for African-American, Hispanic, or individual female borrowers that would constitute a violation of the ECOA or FHA. The Bank admits facts necessary to establish this Court's jurisdiction over it and over the subject matter of this action.

## II.    BACKGROUND

Evolve Bank & Trust is headquartered in Memphis, Tennessee, and is a member of the Federal Reserve System. From 2014 through 2019, Evolve's Mortgage Division originated over 21,600 home mortgage loans through loan production offices ("LPOs") across 14 states, as well as four depository branches in Arkansas and Tennessee. Evolve operated up to 37 LPOs in a given year, with at least 61 LPOs operating during this time period.

On February 8, 2019, the Federal Reserve referred Evolve to the Department of Justice pursuant to 15 U.S.C. § 1691e(g), after conducting a review of Evolve's mortgage loans originated between January 1, 2014 and December 31, 2016 and determining there was reason to believe that Evolve had engaged in a pattern or practice of pricing discrimination for mortgage loans based on national origin, race, and sex in violation of ECOA.

2

On April 9, 2019, the United States notified Evolve that it was opening an investigation into whether the Bank had engaged in discrimination in the implementation of its mortgage lending policies from 2014 through 2019.

The United States' Complaint alleges that from at least 2014 through 2019, Evolve used a pricing system that gave individual loan production offices broad discretion to select inflated initial interest rates from which they offered discounts or concessions to select borrowers unrelated to the borrowers' creditworthiness or loan characteristics.  The complaint also alleges that Evolve lacked adequate internal control systems to monitor loan offices' exercise of that discretion.  The Complaint further alleges that Evolve's pricing system resulted in Black and Hispanic borrowers paying more for home loans than their white counterparts, and individual female borrowers paying more for home loans than their male counterparts in violation of the FHA and ECOA.  As set forth above, the Bank denies these allegations.

### III.    INJUNCTIVE RELIEF

**A.    General Injunction**

1.    Evolve, including all of its officers, employees, agents, representatives, assignees, and all those in active concert or participation with any of them, is hereby enjoined from engaging in any act or practice that discriminates on the basis of race, sex, or national origin in any aspect of a residential real estate-related transaction in violation of the FHA, or in any aspect of a credit transaction in violation of ECOA or Regulation B, 12 C.F.R. pt. 1002.  This prohibition includes, but is not limited to, the adoption, performance, or implementation of any policy, practice, or act that results in race, sex, or national origin discrimination in the pricing of mortgage loans.

2.      This Order requires that Evolve take actions as set forth below to remedy its alleged discrimination.  Evolve retains the discretion to take any additional actions that it believes are appropriate to achieve the goals of this Order.  The effective date of this Order shall be the date on which it is entered by the Court.

**B.      Compliance Management**

3.      Evolve will maintain and comply with the policies and practices described in this section to monitor and address fair lending risks.

### i.      Fair Lending Committee and Officer

4.      Evolve has established a Fair Lending Committee and hired a Fair Lending Officer, both of which are responsible for monitoring the Bank's fair lending risks.  Evolve will maintain a Fair Lending Committee and Fair Lending Officer throughout the term of this Order.

5.      Throughout the term of this Order, the Fair Lending Committee and the Fair Lending Officer shall be responsible for monitoring and coordinating Evolve's adherence to the provisions of this Order.  The Fair Lending Committee and/or the Fair Lending Officer will review all submissions (including reports, policies, and procedures) required by this Order prior to submission to the United States.

6.      The Fair Lending Committee and/or the Fair Lending Officer shall provide quarterly updates to the Board of Directors regarding the Bank's fair lending compliance and its compliance with this Order.

### ii.      Mortgage Division Loan Pricing Policy

7.      In April 2020, Evolve established a Mortgage Lending Pricing Plan ("Pricing Policy") that minimizes fair lending risk by limiting Mortgage Division loan officers' and loan production offices' discretion in selecting interest rates, offering discounts, and charging fees to

mortgage loan applicants and borrowers.  The Pricing Policy also established margin requirements and mandates documentation of pricing exceptions, including loan officer and loan production office decision-making and managerial approval in a standardized manner.

8.      Within thirty (30) days of the effective date of this Order, Evolve shall submit to the United States for approval a revised Pricing Policy containing objective criteria for setting, approving, and documenting LPO revenue margins, acknowledging that LPO margins vary based on geographic region and functional business models employed by the LPO.  The United States shall review the revised Pricing Policy and raise any objections within thirty (30) days of the submission.  If the United States raises any objections, the parties will confer to resolve their differences.  If they are unable to do so, either party may bring this dispute to this Court for resolution.

9.      After the United States provides its approval for the revised Pricing Policy, Evolve shall implement the revised Pricing Policy and incorporate it into Evolve's current proprietary loan processing system or any processing system to which it applies following the approval by its Board of Directors at its next regularly scheduled monthly Board meeting. Evolve shall not fund any loan, the application for which is submitted after the implementation of the revised Pricing Policy, which is not in compliance with the revised Pricing Policy.

10.     During the term of this Order, Evolve may change its Pricing Policy provided written notice is given to the United States, which will have thirty (30) days from receipt of such notice to raise any objection to the proposed change(s).  If the United States raises any objection, the parties will confer to resolve their differences.  If they are unable to do so, either party may bring the dispute to this Court for resolution.  Evolve will not implement the change(s) during such a dispute.

### iii.     Recordkeeping and Monitoring Program

11.     Within thirty (30) days of the effective date of this Order, Evolve shall provide evidence to the United States that it maintains a recordkeeping system for all residential mortgage loans that ensures consistency across Evolve's branches, loan production offices, and loan officers in the reporting of all fields of the loan application register, including, but not limited to, discretionary pricing components.  The United States will have thirty (30) days from receipt of such evidence of recordkeeping to raise any objection to the recordkeeping system.  If the United States raises any objection, the parties will confer to resolve their differences.  If the parties are unable to come to an agreement regarding such objections, any party may bring the dispute to this Court for resolution.

12.     Within sixty (60) days of the effective date of this Order, Evolve shall have in place a monitoring program designed to ensure compliance with this Order.  This program shall monitor Evolve's residential mortgage loans for potential pricing disparities based on race, sex, and national origin.  At a minimum, the monitoring program will assess disparities in concession incidences and value of concessions in basis points.  For purposes of this paragraph, concessions include: (i) offering a combination of rate and points that yields a below par price; (ii) waiving or reducing customary lender-retained application or closing charges for the specific LPO and market, including: loan origination fees; underwriting fees; discount fees; process fees; document preparation fees; and administrative fees; and/or (iii) offering lender credits without a corresponding rate increase. Evolve shall conduct this assessment at least annually.

13.     The analyses conducted by Evolve to assess disparities in concession incidence and value of concessions in basis points shall utilize methods, thresholds and controls approved in advance by the United States.  Evolve shall submit its proposed methods and controls to the

United States for approval within thirty (30) days of the effective date of this Order.  Nothing in this Order precludes Evolve from conducting additional compliance-related analyses.

14.     In the event that any such assessment discloses statistically significant[2] pricing disparities between Black or Hispanic and white borrowers, or between individual female and male borrowers, Evolve will attempt to determine the reason(s) for those disparities and will promptly take corrective action to address disparities that are attributable to a policy or practice of Evolve and not necessary to achieve one or more of its substantial, legitimate, nondiscriminatory business interests or a legitimate business need.  Corrective action may include, as warranted, financial remediation for borrowers, further modifications to Evolve's Pricing Policy and/or monitoring programs as appropriate, changes to how Evolve's policies and practices regarding how Evolve and/or its branches, loan production offices, and loan officers conduct marketing and/or generate business, education, discipline, or termination of employment or agency relationship, or any other action as deemed appropriate under the circumstances. Evolve shall maintain documentation of all corrective actions taken under this Paragraph, or the reason(s) why it took no corrective action.

15.     Evolve will document all such disparities, determinations, and actions taken and will provide a summary of the annual reviews and any documentation and analysis relating thereto to the United States as part of its reports described in Paragraph 43.  The United States may conduct alternative analyses.

16.     If the United States raises any objections to Evolve's determinations or remedial actions, the parties will meet and confer to consider appropriate steps to address the concerns

---

[2] Statistical significance is a measure of probability that an observed outcome would not have occurred by chance.  As used in this Consent Order, an outcome is statistically significant if the probability that it could have occurred by chance is less than 5%.

raised by the United States' review.  If the parties are unable to come to an agreement regarding such objections, any party may bring the dispute to this Court for resolution.

**C.      Notice to the Public**

17.      For the duration of this Consent Order, Evolve shall continue its existing practice of posting and prominently displaying in each location where applications for its loans are received, on the home page of its website, on loan application forms, and in advertising or marketing a notice of non-discrimination as required by applicable law.

**D.      Equal Credit Opportunity Training Program**

18.      Within ten (10) days after Evolve receives approval for the revised Pricing Policy, Evolve will provide copies of this Consent Order and the revised Pricing Policy to its management officials who: (a) participate in the pricing of residential mortgage loans; (b) have significant involvement in the management of residential mortgage lending, including oversight of loan officers; or (c) have responsibility for conducting fair lending compliance monitoring or reviewing fair lending complaints (hereinafter, "Management Officials").  Evolve shall document that each Management Official has received a copy of this Consent Order and revised Pricing Policy.

19.      Within one hundred and twenty (120) days of the effective date of this Consent Order, Evolve shall provide equal credit opportunity training to all Management Officials, mortgage loan officers, and any other employees who: (a) participate in the pricing of residential mortgage loans; (b) have significant involvement in the management of residential mortgage lending, including oversight of loan officers; or (c) have responsibility for conducting fair lending compliance monitoring or reviewing fair lending complaints (hereinafter, "Covered Employees").  During this training, Evolve shall provide to each Covered Employee: (a) access

to a copy of this Consent Order and a summary of the material provisions of the revised Pricing Policy; and (b) training on the terms of this Consent Order, the revised Pricing Policy, the mortgage loan pricing requirements of the FHA and ECOA, and the Covered Employees' responsibilities under each.  During the term of this Order, Evolve shall provide annual training to all Covered Employees with respect to his/her responsibilities and obligations under the FHA, ECOA, and this Order.  The training materials covering the topics described in this paragraph shall be approved in advance by the United States.  Evolve shall bear all costs and expenses of all training conducted pursuant to this Paragraph.  Evolve shall document the attendance at the equal credit opportunity training by each Covered Employee.

20.     For the duration of this Consent Order, Evolve shall provide a copy of this Consent Order and the revised Pricing Policy to all employees/agents who begin employment in the position of a Management Official following the entry of this Consent Order within ten (10) days of the commencement of their employment in that position and shall document the provision of same to each such Management Official. Evolve shall also provide the fair lending training described in Paragraph 19 to all such Covered Employees within thirty (30) days of the commencement of their employment in that position, or within the time frame set forth in Paragraph 19, where applicable.  Evolve shall document the attendance at the equal credit opportunity training by each such Covered Employee.

**IV.     SATISFACTION OF UNITED STATES' CLAIMS FOR MONETARY RELIEF**

**A.     Establishment of a Settlement Fund**

21.     Evolve shall deposit in an interest-bearing escrow account the total sum of $1,300,000 to compensate for direct damages that the United States alleges aggrieved borrowers may have suffered as a result of its alleged violations of the FHA and ECOA (the "Settlement

Fund").  Title to this account shall be in the name of "Evolve Bank & Trust FBO affected

persons pursuant to Order of the Court in Civil Action No. 1:22-cv----".  Evolve shall provide

written verification of the deposit to the United States within five (5) business days of the entry

of this Consent Order.  Any interest that accrues shall become part of the Settlement Fund and be

utilized and disposed of as set forth herein.  Any taxes, costs, or other fees incurred by the

Settlement Fund shall be paid by Evolve directly into the Fund.

**B.**      **Retention of an Independent Settlement Administrator**

22.      Within thirty (30) days of the effective date of this Order, Evolve shall identify a

proposed independent Settlement Administrator ("Administrator"), who shall be subject to the

approval of the United States.  Within thirty (30) days of an Administrator's selection, Evolve

shall execute a contract with the Administrator to conduct the activities described in this Section

IV.  Evolve shall bear all reasonable costs and expenses of the Administrator.

23.      Evolve's contract with the Administrator shall require the Administrator to

comply with the provisions of this Order as applicable to the Administrator.  The Administrator's

contract shall require the Administrator to work cooperatively with the United States and Evolve

in the conduct of its activities, including reporting regularly to and providing all reasonably

requested information to the United States and Evolve.  The Administrator's contract shall

require the Administrator to comply with all confidentiality and privacy restrictions applicable to

the party who supplied the information and data to the Administrator.  The Administrator's

contract shall require the Administrator, as part of its operation, to establish cost-free means for

affected borrowers to contact it, including an email address, a toll-free telephone number, and

means for persons with disabilities to communicate effectively, including TTY.  The contract

with the Administrator shall require the Administrator to make all reasonable efforts to provide

effective Spanish translation services to affected borrowers, including but not limited to providing live English and Spanish-language-speaking operators to speak to aggrieved borrowers who call the toll-free telephone number and request a live operator, and providing Spanish interpretations and translations for communications with affected borrowers.

24.     In the event the United States has reason to believe that the Administrator is not materially complying with the terms of its contract with Evolve, the United States and Evolve shall meet and confer for the purpose of mutually agreeing upon a course of action to effect the Administrator's material compliance with its contract with Evolve.  In the event that the United States and Evolve are unable to agree within a 30-day period upon a course of action to effect the Administrator's material compliance with its contract with Evolve, the parties shall present the matter to the Court.

**C.     Identification of Persons Eligible to Receive Monetary Relief from the Settlement Fund**

25.     Within fourteen (14) days of the Administrator entering into a contract with Evolve, the United States shall provide to the Administrator and Evolve a list of loans with borrowers that the United States has determined are persons eligible to receive monetary relief from the Settlement Fund under this Order and based on the information and data provided by Evolve during the course of the United States' investigation ("Loan List").

26.     Within thirty (30) days of the date the United States provides the Loan List to Evolve, Evolve will use best efforts to provide to the United States and the Administrator the name, contact information, and Social Security number for the primary borrower and each co-borrower (if any) on each listed loan ("Identified Borrower") to the extent such information is reasonably available.  The contact information provided by the Bank shall include the most recent mailing address in its electronic records (and any existing instruction for the delivery of

mail to the Identified Borrower), and any other available contact information, including telephone numbers and email addresses, to the extent such information is reasonably available. Upon request from the United States, Evolve will provide other contact information to the extent that it is reasonably practicable to obtain the requested information.  Such information and data shall be used by the United States and the Administrator only for the purpose of implementing the Order.

27.     Within ninety (90) days after receipt of all the information required to be provided under Paragraph 26, the United States shall provide Evolve and the Administrator with a list of the initial estimate of the amount each Identified Borrower shall receive from the Settlement Fund ("Initial Estimate List"), which amount will be treated as compensation for damages these persons may have suffered.

28.     The Administrator's contract shall require the Administrator to send each Identified Borrower a letter regarding eligibility for compensation, as described in this paragraph, within sixty (60) days after receiving the Initial Estimate List.  The letter shall be provided to each Identified Borrower in English and Spanish and the form of this letter, including the Spanish translation, shall be subject to the review and approval of the United States.  At a minimum, the letter shall identify the loan(s) the Bank originated to the Identified Borrower and state that the Identified Borrower is eligible for compensation in at least the indicated amount provided he or she executes and returns to the Bank a copy of the agreed-upon release.  English and Spanish versions of the release, the English version of which shall take the form of **Appendix A** and the Spanish translation of which shall be subject to the review and approval of the United States within thirty (30) days of submission for approval by Evolve, shall be enclosed with the letter along with an addressed and postage-paid return envelope.

29.     If an Identified Borrower does not respond to a letter from the Administrator within sixty (60) days, the Administrator's contract shall require the Administrator to take additional reasonable steps to confirm the current or updated address of the Identified Borrower and send a second letter to the current or updated addresses via Federal Express or a similar carrier or process.  The additional reasonable steps taken by the Administrator shall include (a) searching for updated addresses via Evolve's own address records and via Clear, Lexis Nexis, or other suitable address databases, (b) sending duplicate letters to updated addresses, and (c) contacting Identified Borrowers by telephone.  At its own cost, the United States may make its own efforts to locate Identified Borrowers.

30.     The Administrator's contract shall require the Administrator to provide to the United States and Evolve a monthly accounting of releases received, notifications for which no response has been received or that were reported to be undeliverable, and any re-mailings.

31.     The Administrator's contract shall require the Administrator to create a list of Identified Borrowers from the Initial Estimate List who have submitted executed releases and are therefore entitled to compensation (the "Compensation List") and provide the Compensation List to the United States within four (4) months from the date of the Administrator's initial mailing described in Paragraph 28.

**D.      Distribution of Payments to Eligible Identified Borrowers**

32.     The United States shall specify the final payment amount each Identified Borrower on the Compensation List shall receive from the Settlement Fund, and provide such information to the Administrator in the form of a Final Payment List, no later than sixty (60) days after receiving the Compensation List.  The total amount of payments on the Final Payment List shall not exceed the amount of the Settlement Fund, including accrued interest.  No

individual, agency, or entity may request that the United States, Evolve, or the Administrator review the final payment amounts.

33.     The Administrator's contract shall require the Administrator to deliver payments to all Identified Borrowers on the Final Payment List in the amounts determined by the United States as described in Paragraph 32 within thirty (30) days after the Administrator receives the Final Payment List with specified amounts.

34.     The Administrator's contract shall require the Administrator to mail one reminder postcard to all Identified Borrowers on the Final Payment List who have not deposited their checks within forty-five (45) days of the mailing of such checks.  For any payment that is returned to the Administrator as undeliverable, or not deposited within three (3) months of the date the check was mailed, the Administrator shall make reasonable efforts to locate and contact the Identified Borrower on the Compensation List.  If the Administrator is able to locate another address, the Administrator shall redeliver those payments returned as undeliverable.  If after a second attempt to deliver payment an Identified Borrower on the Final Payment List has not deposited the check, upon request of the United States or upon request of individuals on the Final Payment List, Evolve shall reissue a new check to that Identified Borrower, provided the request is made within the timeframe established in Paragraph 35.  Evolve or the Administrator shall provide to the United States a monthly accounting of the checks deposited, the checks that are not deposited within three (3) months of their mailing, the returned checks, results of the efforts relating to returned and uncashed checks, and re-mailing of checks.

35.     The Administrator's contract shall require the Administrator to maintain the cost-free means for consumer to contact it described in Paragraph 23 at least until twelve (12) months from the date the United States provides the Final Payment List to the Administrator in

accordance with Paragraph 32. Identified Borrowers on the Final Payment List shall have until the end of the twelve (12) months to deposit checks or request reissuance of payments that have not been deposited.

36.     Payments from the Settlement Fund to Identified Borrowers shall be subject to the following conditions:

      a.   No Identified Borrower shall be paid any amount from the Settlement Fund until he or she has executed and delivered to Evolve a written release, as set forth in **Appendix A**, of all claims, legal or equitable, that he or she might have against the released persons and entities regarding the claims asserted by the United States in this lawsuit, so long as such claims accrued prior to the effective date of this Order; and

      b.   The total amount paid by Evolve collectively to Identified Borrowers shall not exceed the amount of the Settlement Fund, including accrued interest.

37.     All money not distributed to Identified Borrowers from the Settlement Fund, including accrued interest, within one year of the date the United States provides the Final Payment list to the Administrator in accordance with Paragraph 32 shall, after diligent efforts to locate all such Identified Borrowers as specified in Paragraph 34, be distributed to the United States Treasury in the form of an electronic funds transfer based on written instructions to be provided by the United States.

38.     Evolve shall not be entitled to a set-off, or any other reduction, of the amount of payments to Identified Borrowers because of any debts owed by the Identified Borrowers. Evolve also shall not refuse to make a payment based on a release of legal claims or loan modification previously signed by any Identified Borrower.

## V.       CIVIL PENALTY

39.       Within ten (10) days of the effective date of this Order, Evolve will pay $50,000 to the United States Treasury as a civil penalty under 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.  The payment will be in the form of an electronic funds transfer in accordance with written instructions to be provided by the United States.

40.       The civil penalty referenced in Paragraph 39 is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7) and is not compensation for actual pecuniary loss.  Evolve will not seek to discharge any part of this debt in bankruptcy.

41.       In the event Evolve engaged in any future violations of the FHA, such violation(s) will constitute a "subsequent violation" under 42 U.S.C. § 3614(d)(1)(C)(ii).

## VI.      EVALUATING AND MONITORING COMPLIANCE

42.       For the duration of this Order, Evolve shall retain all records relating to its obligations under this Order as well as its compliance activities as set forth herein, including all documentation required by the Pricing Policy.  The United States shall have the right to receive such records upon request.

43.       For the duration of this Order, Evolve shall provide the United States the periodic reports of its fair lending analyses and remediation actions, pursuant to Section III.B.iii.[3]  In addition to these reporting requirements, Evolve shall submit a report to the United States on the first anniversary of this Consent Order regarding its progress in establishing and implementing

---

[3] Evolve will send all reports referenced in this Consent Order by overnight mail to:  Chief, Housing and Civil Enforcement Section, Civil Rights Division, DJ 188-9-8, United States Department of Justice, 150 M St., NE, 8.1102, Washington, D.C. 20002 or by such other electronic delivery as the United States notifies Evolve.

each of the remedial items specified in this Consent Order.  Thereafter, Evolve shall submit a report annually to the United States for the term of the Consent Order describing the actions taken in compliance with the provisions of the Consent Order.  The report shall include an objective assessment of the extent to which each quantifiable obligation was met, an explanation of why any particular component fell short of meeting the goal for that year, and any recommendations for additional actions to achieve the goals of this Consent Order.  If applicable, Evolve shall attach to reports described in this Paragraph representative copies of training material disseminated pursuant to this Consent Order, as well as documentation of attendance at equal credit opportunity training as required by paragraphs 19 and 20.  In addition, Evolve shall provide to the United States a copy of any electronic database provided to Evolve's prudential regulator that contains all the mortgage loan pricing-related data that it is required to submit pursuant to HMDA, supplemented by any additional data fields that the United States or Evolve's prudential regulator may request.

44.     For the duration of this Order, Evolve will continue to maintain a complaint resolution program to address consumer complaints alleging discrimination regarding residential mortgage loans originated by Evolve.  Documentation regarding this complaint resolution program, including documentation of individual complaints and resolutions, if any, will be made available to the United States as part of the reports referenced in Paragraph 43.  A person will not be deemed ineligible for the complaint resolution program on the basis of having executed the release described in Paragraph 28, but there is no requirement under this Order that any complaint necessarily be resolved for or against the lender.

## VII.   ADMINISTRATION

45.     This Consent Order shall terminate ninety (90) days after the submission of Evolve Bank's fourth annual report to the United States pursuant to Paragraph 43. Notwithstanding this provision, the term of this Consent Order may be extended by agreement of the parties or upon motion to the Court by the United States, for good cause shown.

46.     Any time limits for performance fixed by this Consent Order may be extended or reduced by mutual written agreement of the parties.  Additionally, details related to administration of the Settlement Fund as set forth in Section IV may be modified by written agreement of the parties and without further Court approval.  Any other modifications to this Consent Order may be made only upon approval of the Court, upon motion by any party.

47.     In the event that any disputes arise about the interpretation of or compliance with the terms of this Consent Order, the parties shall endeavor in good faith to resolve any such dispute between themselves before bringing it to this Court for resolution.  The parties agree that if any party reasonably believes that another party failed to comply with any obligation under this Consent Order, it shall provide written notice thereof and allow a period of at least thirty (30) days to discuss a voluntarily resolution of the alleged violation before presenting the matter to this Court.  In the event of either a failure by Evolve to perform in a timely manner any act required by this Consent Order or an act by Evolve in violation of any provision hereof, the United States may move this Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

48.     Nothing in this Consent Order shall excuse Evolve's compliance with any currently or subsequently effective provision of law or order of a regulator with authority over Evolve that imposes additional obligations on it.

49.     The parties agree that, as of the date of the entry of this Consent Order, litigation is not "reasonably foreseeable" concerning the matters described above.  To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the party is no longer required to maintain such litigation hold.  Nothing in this Paragraph relieves any party of any other obligations imposed by this Consent Order or any record retention obligations imposed by statute or regulation.

50.     Evolve's compliance with the terms of this Consent Order, including any modifications agreed to by the parties or ordered by the Court, shall fully and finally resolve all claims of the United States arising prior to the effective date of this Consent Order relating to the alleged violation of the fair lending laws by means of discriminating on the basis of race, sex, and national origin, as alleged in the Complaint in this action, including all claims for equitable relief and monetary damages and penalties arising out of the pricing policy and practices described in the Complaint.  This Consent Order does not release claims for practices not addressed in the Complaint's allegations, or that were not within the subject matter of the United States' investigation, including claims that may be held or are currently under investigation by any federal agency, or any claims that may be pursued for actions that may be taken by any executive agency established by 12 U.S.C. § 5491 or the appropriate Federal Banking Agency, as defined in 12 U.S.C. § l8l3(q), against Evolve or any of its affiliated entities.

51.     Each party to this Consent Order shall bear its own costs and attorneys' fees associated with this litigation.

52.     This matter will be closed with entry of Judgment after this Consent Order is entered.  The Court shall retain jurisdiction for the purpose of enforcing the Consent Order pursuant to <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 381-82 (1994).

**IT IS SO ORDERED,** this 17th day of October, 2022.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE

**APPENDIX A**

<u>Full and Final Release of Claims</u>

     In consideration for the parties' agreement to the terms of the Consent Order entered in <u>United States v. Evolve Bank & Trust</u> as approved by the United States District Court for the Western District of Tennessee and in consideration for the payment of $_____,
I, _____ [**print name**], do hereby agree, to remise, release, and forever discharge any and all claims of any kind, nature or description whatsoever, related to the facts at issue in the litigation referenced above, or in any way related to that litigation, up to and including the date of the entry of the Consent Order, that I may have against Evolve Bank & Trust and its agents, employees, officers, members, heirs, executors, spouses, administrators, successors, insurers, assigns, and all related entities. These claims may be known and unknown, up to and including the date of execution of this release.

     I acknowledge and understand that, by signing this Release, I am waiving any right to pursue my own legal action against Evolve Bank & Trust based on the allegations made by the United States in this case, which Evolve Bank & Trust denies. I waive any claims I may have against the United States, the Department of Justice, or its agents or employees, arising out of this action. This Release constitutes the entire agreement between Evolve Bank & Trust and me, without exception or exclusion.

Executed this ___ day of _____, 20__.

_____
Signature

_____
Print Name